IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

MAY 3 0 2024

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES E. COLBURN III,<br>a.k.a. "CC"<br><br>*Defendant.* | Case No. 1:24-CR-121<br><br>Count 1: 18 U.S.C. § 1349<br>Conspiracy to Commit<br>Mail and Wire Fraud<br><br>Counts 2–6: 18 U.S.C. §§ 1343 & 2<br>Wire Fraud<br><br>Count 7: 18 U.S.C. §§ 1957 & 2<br>Unlawful Monetary Transaction<br><br>Forfeiture Notice |

**INDICTMENT**

May 2024 Term – Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

GENERAL ALLEGATIONS

1.      At all times relevant to the Indictment, the defendant CHARLES E. COLBURN III, a.k.a. "CC" (the "defendant") was the Chairman and Chief Executive Officer of GEO RESERVE CORPORATION, also known as GEO RESERVE GROUP ("GEO RESERVE"), a business entity that held itself out as being involved in developing undervalued properties in the oil industry.

2.      GEO RESERVE was incorporated in the state of Delaware in and around December 2015 under the name "Sherman Hill Acquisition Corporation." The entity changed its name to "Geo Reserve Corporation" in and around July 2016. Sometime thereafter, but no later than in and around July 2017, the defendant acquired GEO RESERVE and moved its principal place of business to Fredericksburg, Virginia, which is in the Eastern District of Virginia.

1

3. The defendant's son, co-conspirator 1 ("CC-1"), was a director of GEO RESERVE and assisted the defendant in preparing pitch presentations to potential investors. Co-conspirator 2 ("CC-2") was a friend of the defendant who falsely represented to investors that he had invested $300,000 in GEO RESERVE and held himself out as a shareholder to investors.

4. The Delaware secretary of state canceled the existence of GEO RESERVE as a corporate entity in and around June 2020, for non-payment of taxes.

5. In and around April 2016, CC-1 opened a bank account at Navy Federal Credit Union, held in the name of GEO RESERVE, ending in -8141 (hereinafter, "NF-8141"). Navy Federal Credit Union is a financial institution headquartered in the Eastern District of Virginia that conducts business in interstate and foreign commerce.

<u>COUNT ONE</u>
*(Conspiracy to Commit Mail and Wire Fraud)*

6. The allegations contained in paragraphs 1–5 of this Indictment are realleged as if fully set forth herein.

7. From in and around 2017 through in and around 2021, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, the defendant CHARLES E. COLBURN III did knowingly combine, conspire, confederate, and agree with CC-1, CC-2, and others known and unknown to the Grand Jury, to commit the following offenses:

   a. to knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice, did knowingly caused to be delivered certain mail, in violation of Title 18, United States Code, Section 1341; and

b. to knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

OBJECT OF THE CONSPIRACY

8. The object of the conspiracy was for the defendant and his co-conspirators to enrich themselves, as well as the members of the defendant's family, by fraudulently obtaining money from GEO RESERVE's investors.

WAYS, MANNER, AND MEANS

The ways, manner, and means by which the defendant, CC-1, CC-2, and others sought to accomplish the scheme and artifice to defraud included, but were not limited to, the following:

9. The defendant and his co-conspirators met with potential investors in person to convince them to invest in GEO RESERVE. The defendant and his co-conspirators connected with potential investors via mutual friends, acquaintances, or other investors.

10. The defendant, CC-1, CC-2, and others made pitch presentations, in which they presented detailed PowerPoint presentations touting GEO RESERVE's expertise, connections in the oil industry, and ability to make money.

11. The pitch presentations included representations that GEO RESERVE had already leased thousands of acres of supposedly undervalued or distressed land in several different states, including Montana, Texas, and Wyoming. The defendant and his associates represented to investors that GEO RESERVE was uniquely positioned in the oil industry—by virtue of the company's

3

experts and strategic partnerships—to use investor funds to convert unprofitable land into profitable, oil-producing land.

12. In reality, GEO RESERVE did not have any leases to drill for oil on any land and was not formally partnered with any outside experts in engineering or oil drilling.

13. The defendant and his co-conspirators also falsely told victims that GEO RESERVE had already secured millions of dollars in funding from individuals in the professional sports world to induce the victims to invest.

14. The defendant sold shares of stock in GEO RESERVE at a rate of $1 per share. He falsely represented to investors that GEO RESERVE was going to have an Initial Public Offering (IPO) within approximately 45 or 90 days, at which point the defendant expected the stock to trade at as much as $12–$15 per share.

15. The defendant and his co-conspirators also concealed and omitted to state material facts to investors. For example, the defendant did not disclose to investors that he had a prior conviction for securities fraud. Additionally, CC-2 did not disclose that he had lost a large amount of money in a prior investment with the defendant, and as a result, the defendant had gifted CC-2 a certificate for 300,000 shares of stock in GEO RESERVE; CC-2 had not actually invested money in GEO RESERVE.

16. In reliance on the materially false representations and omissions in these pitch presentations, as well as representations that the defendant and others made in email and telephone communications and in documents provided to investors, investors provided the defendant with funds via various means, including interstate wire transmissions between banks, as well as by personal checks, some of which were mailed to the defendant's residence in the Eastern District of Virginia.

17. Both the checks and wire transfers from investors were deposited into NF-8141. The money was not used to pay for land leases, payroll, supplies, or any other expense associated with drilling for oil. Instead, the defendant and CC-1 transferred investor money from NF-8141 to the defendant's personal accounts and his family members and used the rest to pay for other personal expenses.

18. When GEO RESERVE did not go public, some investors asked the defendant if they could get their money back. The defendant falsely told these investors that their money had been used to purchase land rights and could not be returned. In order to further the scheme to defraud, the defendant further told some investors falsely that the land was going to be used for a new investment venture involving growing and harvesting cannabis.

(All in violation of Title 18, United States Code, Section 1349)

## COUNTS TWO THROUGH SIX
### *(Wire Fraud)*

19. The allegations contained in paragraphs 1–5 of this Indictment are realleged as if fully set forth herein.

20. From in and around 2017 through in and around 2021, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, the defendant CHARLES E. COLBURN III did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and transmitted and caused to be transmitted writings, signs, signals, and sounds by means of wire communication in interstate commerce.

### THE PURPOSE OF THE SCHEME AND ARTIFICE

21. The purpose of the scheme and artifice was for the defendant to enrich himself, as well as the members of the defendant's family, by fraudulently obtaining money from GEO RESERVE's investors.

### THE SCHEME AND ARTIFICE

22. The Ways, Manner, and Means section of Count One of this Indictment is realleged and incorporated herein as a description of the scheme and artifice.

### EXECUTIONS

23. On or about the dates specified as to each count below, in the Eastern District of Virginia and elsewhere, the defendant, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, as more particularly described in each count below:

| Count | Date | Wire |
|---|---|---|
| 2 | 06/03/2019 | $15,000 wire transfer from B.M., who is a resident of Florida, to NF-8141, an account held in the Eastern District of Virginia. |
| 3 | 06/05/2019 | $15,000 wire transfer from R.S.'s bank account at USAA Federal Savings Bank, a financial institution in Texas, to NF-8141, an account held in the Eastern District of Virginia |
| 4 | 06/05/2019 | $25,000 wire transfer from B.M., who is a resident of Florida, to NF-8141, an account held in the Eastern District of Virginia. |
| 5 | 06/07/2019 | $50,000 wire transfer from L.S., who is a resident of South Carolina, to NF-8141, an account held in the Eastern District of Virginia. |
| 6 | 03/15/2021 | $250,000 wire transfer from S.G., who is a resident of Louisiana, to NF-8141, an account held in the Eastern District of Virginia. |

(In violation of Title 18, United States Code, Sections 1343 and 2)

## COUNT SEVEN
### *(Unlawful Monetary Transaction)*

24. The allegations set forth in Paragraphs 1 through 23 and Counts One through Six of this Indictment are realleged and incorporated by reference as if fully set forth herein.

25. On or about March 16, 2021, in the Eastern District of Virginia, the defendant, CHARLES E. COLBURN III, knowingly engaged in, and attempted to engage in, a monetary transaction by, through, and to a financial institution in criminally derived property of a value greater than $10,000, in and affecting interstate or foreign commerce—that is, depositing a check in the amount of $50,000, drawn on NF-8141, into his personal Navy Federal Credit Union account—such property having been derived from specified unlawful activity, that is the proceeds of the fraud scheme alleged in Counts One through Six of this Indictment.

(In violation of Title 18, United States Code, Sections 1957 and 2)

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS that there is probable cause that the property described below is subject to forfeiture.

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendant CHARLES E. COLBURN III is hereby notified that if convicted of the offenses set forth in Counts One through Six in the Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the defendant's interest in any property, real or personal, constituting or derived from proceeds traceable to the offense.

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendant CHARLES E. COLBURN III is hereby notified that if convicted of the offense set forth in Count Seven in the Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

The property subject to forfeiture includes, but is not limited to, a monetary judgment in the amount of not less than $1,577,811.47, representing the amount of proceeds the defendant obtained as a result of the violations described in this Indictment.

If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence; (b) has been transferred to, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot

be divided without difficulty; it is the intention of the United States to seek forfeiture of any other property of the defendant, as subject to forfeiture under 21 U.S.C. § 853(p).

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 28, United States Code, Section 2461(c); Title 21, United States Code, Section 853(p); and Federal Rule of Criminal Procedure 32.2(a))

A TRUE BILL

*Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office*

_____
GRAND JURY FOREPERSON

JESSICA D. ABER
United States Attorney

By: *[signature]*
Katherine E. Rumbaugh
Russell L. Carlberg
Assistant United States Attorneys